[Cite as *Smith v. Ohio State Univ.*, 2022-Ohio-4101.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Brooke Smith, | : | |
| Plaintiff-Appellee, | : | No. 22AP-125 |
| | | (Ct. of Cl. No. 2020-00321JD) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| The Ohio State University, | : | |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on November 17, 2022

**On brief:** *Squire Patton Boggs (US) LLP*, and *John R. Gall, Traci L. Martinez*, *E. Joseph D'Andrea*, *Elizabeth P. Helpling*, and *Roger M. Gold*, for appellant. **Argued:** *John R. Gall.*

**On brief:** *Climaco Wilcox Peca & Corogoli Co., LPA*, and *Scott Simpkins*, and *Bursor & Fisher, P.A.*, and *John Arisohn*, *Scott Bursor*, and *Sarah Westcot*, for appellee. **Argued:** *John Arisohn.*

APPEAL from the Court of Claims of Ohio

SADLER, J.

{¶ 1} Defendant-appellant, The Ohio State University ("OSU"), appeals a decision and judgment of the Court of Claims of Ohio granting the motion for class certification filed by plaintiff-appellee, Brooke Smith. For the following reasons, we reverse the trial court judgment.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2} In 2016, Smith was admitted to OSU as an undergraduate student at the Columbus campus. By the spring semester of 2020, Smith was a fourth-year student in OSU's College of Education enrolled in a supervised student teaching internship and an in-

person seminar corresponding with the internship—the last two classes she needed to graduate.

{¶ 3} According to OSU's policies, Smith, as well as every other enrolled student, were "financially responsible to The Ohio State University for payment of all tuition, room and board fees, and related costs added to the student account" including "fees." (Appellant's Memo. in Opp. to Class Certification, Ex. A, A Buckeye's Guide to Academic Policies, hereinafter "Academic Policy," at 37.) The Academic Policy described the fees that could be accessed, in part pertinent to this case, as follows:

> **Instructional Fee**
> The Instructional Fee is used to fund instructional costs at the university. Students who are taking classes at more than one Ohio State campus during the same term are assessed fees based on the campus where they are taking the most instructional credit hours.
>
> **General Fee**
> The General Fee is mandated by the State of Ohio for the funding of non-instructional student services. At Ohio State, general fees provide student services that contribute to students' emotional and physical well-being as well as their cultural and social development outside formal instruction. These student services include Counseling and Consultation Services, Student Health Services, Disability Services and the Multicultural Center.
>
> **Learning Technology Fee**
> Some majors charge a Learning Technology Fee to pay for certain technology-related expenses within the primary program. [And providing a link to a fee table for particular majors.]
>
> **Program Fee**
> Some majors charge a Program Fee to pay for certain program-related expenses. [And providing a link to a fee table for particular majors.]
>
> **Course Fee**
> Course Fee(s) fund additional costs for specific courses. Any courses that require added materials and/or equipment will have this fee. [And providing a link to a fee table for particular courses.]
>
> * * *

**Distance Education fee**

Instruction in distance education courses occurs via technology; they have no scheduled in-classroom or on-site activities. Students enrolled exclusively in distance education courses are assessed a distance education administration surcharge of $100 per student per term. For these students, site-based fees (COTA Fee, Recreation Fee and Ohio Union Fee) are waived. * * *

If a student has any regular or "hybrid" courses (regular courses that also have a significant distance education component but are not exclusively distance education) in addition to distance education classes, all regular fees are assessed. [And providing a link to a fee table for programs specifically designed as distance learning.]

* * *

**Student Activity Fee**

All students at the Columbus campus are assessed a Student Activity Fee each term. This fee is used to fund major campus events planned by the Ohio Union Activities Board, student organizations, student governments, the Discount Ticket program, Buck-I-SERV (the alternative breaks program), local community service initiatives, and some of Ohio State's largest and most traditional campus programs.

* * *

**COTA Fee**

The COTA Fee provides students at the Columbus campus unlimited use of Central Ohio Transit Authority (COTA) services each term.

(*Id.* at 37-40.) Out-of-state residents, such as Smith, also incurred a surcharge as compared to Ohio residents.

{¶ 4} The Academic Policy required students to "agree to [a] Financial Responsibility Statement before they can register for classes each term." (*Id.* at 41-42.) The Financial Responsibility Statement reiterates the student's agreement to be "financially responsible to The Ohio State University for payment of all tuition, room and board fees and related costs added to [the student's] account" and sets forth the student's "promise to pay any fees, fines or penalties" related to attendance at the university. (Appellant's Memo. in Opp. to Class Certification, Ex. J, Financial Responsibly Statement at 1.)

{¶ 5} According to Smith, for the spring 2020 semester, she paid OSU a total of $15,548.77 in fees comprised of: $4,584.00 instructional fee (i.e., tuition), a $10,488.50

non-resident surcharge on her tuition, a $186.00 general fee, a $37.50 student activity fee, a $90.00 learning technology fee, a $74.87 recreational fee, a $74.40 student union facility fee, and a $13.50 COTA bus fee. (Appellee's Brief at 28.)  On or about January 6, 2020, Smith began both her internship, which involved a 12-week field placement in a local public school district classroom, and her reflective seminar, which was held in-person on OSU's Columbus campus.

{¶ 6}  The semester proceeded without incident until February 2020, when the COVID-19 pandemic struck the United States.  In response to the pandemic emergency, the State of Ohio mandated, among other restrictions and with limited exceptions, stay-at-home orders and the closure of schools.  As a result, on March 16, 2020, following spring break, OSU transitioned all in-person classes to remote instruction and closed its campus facilities.  The public school district where Smith was placed for her internship likewise ceased in-person instruction.  Consequently, Smith's in-person internship halted, and her seminar transitioned to remote instruction.  Smith participated in asynchronous student teaching in the form of "read aloud[s]" and completed alternative assignments for her seminar. (Smith Depo. at 80.)  OSU considered the combination of in-person instruction, the read alouds, and alternative activities sufficient for Smith to complete her course requirements, and Smith graduated on-time in May 2020 with a degree in Early Childhood Education.  OSU provided Smith a partial, pro-rated refund for room and board and a refund for the recreational fee but did not refund her tuition or the other fees it had charged.

{¶ 7}  On May 21, 2020, Smith filed a class action complaint against OSU claiming breach of contract, unjust enrichment, and conversion.[1]  In her complaint, Smith states the class action lawsuit is brought "on behalf of all people who paid tuition and fees for the Spring 2020 academic semester * * * and who, because of [OSU's] response to [the COVID-19] pandemic, lost the benefit of the education for which they paid, and/or the services for which their fees paid, without having their tuition and fees refunded to them." (Compl. at 1.)  Smith alleged that she paid for a full semester of in-person classes with access to the OSU campus, but, for approximately half the semester, OSU instead provided her with online classes, which Smith asserted are "subpar" and "no way the equivalent" of in-person education.  (Compl. at 2, 7.)  Smith contended OSU's tuition and fees for in-person

---

[1] Smith voluntarily dismissed the conversion claim.

instruction were higher than for on-line instruction because in-person instruction encompasses a different, more robust experience beyond academic instruction. Smith's theory of the case centered on her entering a binding contract with OSU through the admission agreement and payment of tuition and fees, and that she and members of the class "suffered damage as a direct and proximate result of [OSU's] breach, including but not limited to being deprived of the education, experience, and services to which they were promised and for which they have already paid." (Compl. at 11.)

{¶ 8}   On June 30, 2020, OSU filed a motion to dismiss pursuant to Civ.R. 12(B)(6). The trial court denied the motion to dismiss on September 9, 2020.

{¶ 9}   Smith moved for class certification on June 25, 2021. Smith contended the central question to be answered by the class action is: "Should [OSU] be allowed to keep the tuition and fees that students paid for in-person instruction during the Spring 2020 semester, or should it instead be required to refund a portion of that money because it did not provide the services that students paid for?" (Mot. for Class Certification at 1.) According to Smith, the "handbooks, catalogs, policies, and brochures will provide the basis for any contractual terms across the board on a classwide basis." (Mot. for Class Certification at 12.) Smith asserted OSU breached its contract with her and class members when it terminated in-person classes on March 9, 2020. (Mot. for Class Certification at 12.) As to injury caused by the breach, Smith asserted: "none of the undergraduate students at OSU received the full semester of in-person classes that they paid for" but instead received online classes that "she intends to show (through expert testimony) that she should have been charged less for the substitute remote instruction that OSU provided." (Mot. for Class Certification at 3, 12.) She contended the trial court need not "adjudicate whether remote instruction was an adequate substitute for in-person instruction, but rather whether such a question raises a classwide issue" of "economics (i.e., what are the market differences in pricing for in-person instruction vs. emergency remote instruction)." (Mot. for Class Certification at 3.)

{¶ 10} These experts, according to Smith, "have also set out the methods that they will use to measure damages on a classwide basis." (Mot. for Class Certification at 13.) Her survey expert, Steven P. Gaskin, "has designed 'a market research survey and analysis' that will enable him 'to assess the extent of any reduction in market value resulting from the

closure of the OSU campus (measured in dollars and/or percentage terms), meaning the difference in market value between in-person classes and full access to OSU's campus and facilities, compared to the market value of virtual classes and no access to OSU's campus and facilities' " using a survey methodology called "conjoint analysis." (Mot. for Class Certification at 13.)

{¶ 11} According to Gaskin's declaration provided in support of the motion for class certification, this methodology is appropriate where the objective is "to determine the relative market values of a product or service with and without a particular product or service feature or claim on the label or given the disclosure or non-disclosure of a product or service feature at the time and point of acceptance" and "provide valid and reliable measures of consumer choices." (Gaskin Declaration at 3, 4.) Gaskin used similar methodologies in class actions involving consumer products such as motor vehicles, software, internet modems, LED televisions, chainsaws, cereal, iPhones, and pain medicine. In his deposition, Gaskin stated that he had not previously conducted a conjoint survey regarding university tuition prices and could not recall any other conjoint surveys used in this way.

{¶ 12} The nuanced survey design developed by Gaskin elicits responses based on certain defined "features" or "attributes" of an educational experience but is "independent from the pandemic"; it "assum[es] there are two safe * * * educational experiences available." (Gaskin Depo. at 97, 107-08, 111, 147.) Although he agreed that some students' preferences changed during the pandemic for health and safety reasons, he did not account for those preferences in his survey design. (Gaskin Depo. at 107-09.) In other words, the survey design is based on student preferences in a hypothetical safe world without "the added glitch that it might kill them to do one or the other" when evaluating preferences. (Gaskin Depo. at 109, 164.) Along these same lines, according to Gaskin, the design of the survey did not account for students who valued graduating more than the mode of the instruction. (Gaskin Depo. at 164.)

{¶ 13} Gaskin had not conducted the survey since he had not been asked to do so; he proposed the conjoint analysis survey "will be" pretested at some point and then conducted via a web-based software system that "will be" programmed. (Gaskin Declaration at 12.) According to Gaskin, "[t]he results obtained from conducting the

conjoint analysis survey will allow [him] to calculate the reduction in market value (measured in dollars and/or percentage terms) attributable to the closure of OSU campus in Spring 2020." (Footnote omitted.) (Gaskin Declaration at 25.) During his August 24, 2021 deposition, Gaskin agreed that he could not opine with a reasonable degree of scientific certainty that there is a reduction in market value between in-person classes with full access to the campus and virtual classes with no access to the campus at OSU since he had not yet conducted any surveys or analysis. (Gaskin Depo. at 27-32; Gaskin Declaration at 12.)

{¶ 14} According to Smith, once Gaskin issues findings expressed as a percentage of an overpayment factor, Smith's damages expert, Colin B. Weir, would then calculate tuition overpayment by multiplying the percentage overpayment factor by the total tuition that the class paid, prorated for the time period of remote instruction at issue. In his deposition, Weir stated that, although his client (Smith and her team of lawyers) expected a "likely" outcome after the survey is performed, he declined to say he had an expectation of the outcome. (Weir Depo. at 44.) The survey, according to Weir, "tests [a] hypothesis" that could be disproven by the results of the survey—a scenario that Weir recalled occurring in previous, unrelated surveys. (Weir Depo. at 44-45.)

{¶ 15} On September 1, 2021, OSU moved to strike the declarations and exclude the testimony of Smith's experts, but the motion was denied by the trial court. OSU additionally opposed the motion for class certification on its merits, arguing that Smith failed to carry her burden to show class certification is warranted under the rigorous analysis required under Civ.R. 23. In OSU's view, Smith failed to establish common issues of fact exist, let alone predominate, since there is no common, class-wide proof of either breach of contract or injury and because the fact and extent of injury requires individual inquiries, which Smith's experts failed to take into account. OSU further argued the conjoint analysis methodology proposed by Smith's expert's is unreliable and untested in assessing university tuition, and, regardless, is "speculation"—no part of it had yet been performed to stand as evidence of class-wide injury sufficient to meet Civ.R. 23 requirements. (Memo. in Opp. at 20.)

{¶ 16} To contrast Smith's experts' potential finding of economic injury, OSU provided a supporting affidavit and official documents of the University Registrar showing

OSU offered four different modes of instruction in Spring 2020—in-person, hybrid, distance enhanced, and distanced learning—each "identical" in cost. (Bricker Aff., Ex. A at 3.) Further, each mode of instruction had, built-in, the potential for remote instruction regardless of a state of emergency: an in-person course was generally defined to include up to 24 percent of remote instruction; a hybrid course involved a combination go in-person and online instruction with 25-74 percent of student activities completed online; a distance enhanced course offered 75-99 percent of student activities online; and a distance learning course would be conducted completely online. (Memo. in Opp. at 3; Bricker Aff., Ex. A at 2-3; July 6, 2021 Letter, Ex. C at 1.) OSU provided an expert report opining the proposed class was not economically damaged by OSU's transition to online instruction for a few weeks during the Spring 2020 semester, and that Smith's experts' proposed methodology was flawed in several key respects. OSU emphasized that, "before registering for classes, students agree to be financially responsible to OSU for the payment of all tuition, room and board fees and related costs that are added to the student's account." (Bricker Aff., Ex. A at 5.) OSU additionally asserted that even if breach and injury could be shown, the amount of damages is not capable of measurement on a class-wide basis, Smith is inadequate as a representative of the class, and the stated class is overbroad, ambiguous, and indefinite.

{¶ 17} Smith filed a reply to the memorandum in opposition to class certification on September 29, 2021. Smith argued that the post-COVID-19 "version of OSU should have cost less." (Reply to Memo. in Opp. at 1.) Smith cited to Weir's deposition that explained that, at the point of sale, "[i]f the value of that tuition would be less on a marketwide basis, everybody is injured by an overpayment." (Reply to Memo. in Opp. at 1, citing Weir Depo. at 136.) Therefore, in Smith's view, calculation of overpayment does not depend on individual questions. Smith added, "[b]ecause there is no data on the market price for online-only classes at OSU without campus access, a survey is required to calculate it." (Reply to Memo. in Opp. at 5.) Smith included Gaskin's reply to the report of the OSU's expert, a reply declaration from Weir, and part of a deposition in which Weir addressed injury and explains, "[i]t remains to be seen what the outcome of the Gaskin survey will be. * * * So if the value of that tuition would be less on a marketwide basis, everybody is injured by an overpayment." (Weir Depo. at 135-36.)

{¶ 18} The trial court held an oral hearing on class certification on December 13, 2021. During the hearing, the trial court expressed that it did not "want the issue of the identification of the class being something that bogs this case down" and that it would like to certify a class in order to reach the merits issues. (Dec. 13, 2021 Hearing Tr. at 23.) The attorneys for both parties likewise acknowledged the trial court's reluctance to consider issues related to the merits of the case at the class certification stage. Smith's attorney stated, "[s]o I know the Court doesn't want to get into the merits at this stage, and I won't do that," while OSU's attorney similarly stated, "[a]nd I understand Your Honor's position here which is you want to get by the class phase and onto the merits." (Dec. 13, 2021 Hearing Tr. at 7, 28.)

{¶ 19} OSU declined the court's suggestion to agree to a class definition and persisted in arguing Smith had not met her burden in adducing common evidence that class members suffered an injury to warrant class certification. OSU argued that, in fact, no evidence of common injury exists in this case: Smith's expert was unable to opine whether there is a diminished value since the proposed survey had not yet been done. OSU emphasized that under prevailing case law, "for the class phase, [presenting] the methodology alone is not sufficient." (Dec. 13, 2021 Hearing Tr. at 29.) OSU additionally argued against Smith as a representative of the proposed class. Smith countered that, at the class certification stage, only a methodology for calculating damages is needed; she did not separately address OSU's argument regarding the lack of any common evidence of injury.

{¶ 20} In the trial court's view, "[t]he reason that the expert hasn't done [the survey and analysis] is because the plaintiffs don't want to pay him [a large sum of money] to go and do that" and, as a reason to certify the class, that the court believed "getting to the merits of this case is something that is important to do." (Dec. 13, 2021 Hearing Tr. at 18-19.) The trial court acknowledged the damages issue is "perplexing," but wanted "to give the plaintiffs an opportunity to give their best shot, let me look at it. Let me see what it is." (Dec. 13, 2021 Hearing Tr. at 20.) As to the issue of calculating damages, the trial court signaled that the methodology presented, while "maybe improbabl[e] or difficult[]," was nevertheless sufficient for class certification as long as "it is not in the realm of impossibility." (Dec. 13, 2021 Hearing Tr. at 48.) The trial court added, "[b]ut that's not

what I'm here to determine today * * * I'm here to determine whether a class should be certified." (Dec. 13, 2021 Hearing Tr. at 48.)

{¶ 21} On January 21, 2022, the trial court issued its written decision and judgment entry certifying a class consisting of: "All undergraduate students enrolled in classes at the Columbus campus of The Ohio State University during the Spring 2020 semester who paid tuition, the general fee, student union activity fee, learning technology fee, course fees, program fees, and/or the COTA bus fee." (Jan 21, 2022 Decision at 4 and Judgment Entry at 1.) In doing so, the trial court: accepted Smith's implied contract theory; determined the proposed class is identifiable, unambiguous and not overbroad; found that the injury suffered by the class is "losing the benefit for which they contracted: in-person classes and access to the campus"; found the "proposed * * * model of determining that damages is consistent with its liability case;" and agreed Smith was a proper representative of the class. (Jan 21, 2022 Decision at 2-3, 15.)

{¶ 22} Appellant filed a timely notice of appeal.[2]

## II. ASSIGNMENTS OF ERROR

{¶ 23} Appellant sets forth eight assignments of error for review:

> A. In its Decision of January 21, 2022, the trial court erred and abused its discretion in certifying the class because it failed to conduct the "rigorous analysis" required by Civ.R. 23 in determining whether Plaintiff had satisfied the prerequisites for class certification.
>
> B. In its Decision of January 21, 2022, the trial court erred and abused its discretion when it found that Plaintiff's claims satisfied the commonality requirement of Civ.R. 23.
>
> C. In its Decision of January 21, 2022, the trial court erred and abused its discretion by certifying the class when individual issues of fact predominated as to the existence of an implied contract, of a breach of that contract, of injury and of damages, and a class action was not superior for resolving the controversy.
>
> D. In its Decision of January 21, 2022, the trial court erred and abused its discretion when it certified the class, which was overbroad and ambiguous as stated.

---

[2] A motion for summary judgment filed on November 5, 2021 by OSU on the basis of liability remains pending before the trial court.

E. In its Decision of January 21, 2022, the trial court erred and abused its discretion when it held that Plaintiff's claims were typical of the class and that Plaintiff herself was a member of the class she sought to represent.

F. In its Decision of January 21, 2022, the trial court erred and abused its discretion when it held that that Plaintiff was an adequate representative, where her alleged injuries differed from other members of the class and where her interests were inherently at odds with a substantial number of the class members.

G. In its Decision of January 21, 2022, the trial court erred and abused its discretion when it failed to conduct the "rigorous analysis" required under Civ.R. 23 regarding Plaintiff's experts' proposed methodology to determine liability and damages, and when it failed entirely to consider OSU's expert's report and testimony.

H. In its Decision of January 21, 2022, the trial court erred and abused its discretion when it certified the class in a suit over which the court lacked jurisdiction because OSU is an agency or instrumentality of the State, and its decision to temporarily close or restrict access to its facilities in the face of the COVID-19 pandemic was a basic policy decision characterized by a high degree of official judgment and discretion.

## III. STANDARD OF REVIEW

{¶ 24} A trial court has broad discretion in deciding whether a class action may be maintained, and that conclusion will not be disturbed absent a showing of an abuse of discretion. *Egbert v. Shamrock Towing, Inc.*, 10th Dist. No. 20AP-266, 2022-Ohio-474, ¶ 14, citing *Marks v. C.P. Chem. Co., Inc.*, 31 Ohio St.3d 200 (1987), syllabus. However, "a trial court's discretion in deciding whether to certify a class action is not without limits and must be exercised within the framework of Civ.R. 23." *Egbert* at ¶ 15, citing *Hamilton v. Ohio Sav. Bank*, 82 Ohio St.3d 67, 70 (1998). Moreover, as a trial court "does not have discretion to apply the law incorrectly[,] * * * courts apply a de novo standard when reviewing issues of law." *Johnson v. Abdullah*, 166 Ohio St.3d 427, 2021-Ohio-3304, ¶ 38.

## IV. ANALYSIS

{¶ 25} Because OSU's last assignment of error, labeled "H," asserts the trial court lacked jurisdiction to issue the instant decision on class certification, which, if correct, would render the remaining assignments of error moot, we will address it first. Following

analysis of the jurisdictional issue, we will proceed to address appellant's assignments of error concerning the merits of the trial court decision on class certification.

### A. Discretionary Immunity and Jurisdiction of the Court of Claims

{¶ 26} OSU argues that discretionary immunity applies in this case because it is an agency or instrumentality of the state, and its decision to temporarily close or restrict access to its facilities in the face of the COVID-19 pandemic was a basic policy decision characterized by a high degree of official judgment and discretion. In OSU's view, because OSU enjoys discretionary immunity, the trial court lacked jurisdiction over Smith's lawsuit since Smith's claims do not fall within the waiver of sovereign immunity in R.C. 2743.02 as required by R.C. 2743.03(A)(1). OSU believes that although it did not raise discretionary immunity to the trial court, it can be raised at any time because it involves a jurisdictional issue. Therefore, OSU contends this court should determine that the trial court erred and abused its discretion when it certified the class in a suit over which the court lacked jurisdiction.

{¶ 27} Smith counters that because discretionary immunity is an affirmative defense, and OSU did not raise this issue to the trial court, it has been waived. Smith also argues the discretionary immunity argument fails on the merits since not issuing a partial refund to account for the campus closures is merely implementation of the larger policy decision, and, regardless, courts have not applied discretionary immunity to defeat a breach of contract claim (as opposed to a tort claim) against the state.

{¶ 28} The discretionary immunity doctrine provides that the "state cannot be sued for its legislative or judicial functions or the exercise of an executive or planning function involving the making of a basic policy decision which is characterized by the exercise of a high degree of official judgment or discretion." *Al-Jahmi v. Ohio Ath. Comm.*, 10th Dist. No. 20AP-321, 2022-Ohio-2296, ¶ 80, quoting *Reynolds v. State Div. of Parole & Community Servs.*, 14 Ohio St.3d 68, 70 (1984). "Under Ohio law, immunity is an affirmative defense." *Allen v. Dept. of Adm. Servs. Office of Risk Mgt.*, 10th Dist. No. 19AP-729, 2020-Ohio-1138, ¶ 21 (considering discretionary immunity issue arising in the court of claims), citing *Turner v. Cent. Local Sch. Dist.*, 85 Ohio St.3d 95, 97 (1999). *See Pottenger v. Ohio Dept. of Transp.*, 10th Dist. No. 88AP-832, 1989 Ohio App. LEXIS 4549, at *6 (Dec. 7, 1989) (stating the defense of discretionary immunity is an affirmative defense

within the contemplation of Civ.R. 8(C)). Considering precedent explaining the issue of discretionary immunity is an affirmative defense, OSU has not demonstrated that discretionary immunity is jurisdictional in nature.

{¶ 29} Since OSU has not shown that discretionary immunity is a jurisdictional bar, it is an issue that OSU should have raised to the trial court to address in the first instance. "A fundamental rule of appellate review is that an appellate court will not consider any error that could have been, but was not, brought to the trial court's attention." *Greenberg v. Heyman-Silbiger*, 10th Dist. No. 16AP-283, 2017-Ohio-515, ¶ 50, quoting *Little Forest Med. Ctr. v. Ohio Civ. Rights Comm.*, 91 Ohio App.3d 76, 80 (9th Dist.1993). For example, this court declined to address an immunity issue where the state defendant raised public duty immunity as an affirmative defense in an answer but did not argue it in the motion to the trial court, and the trial court did not independently address public duty immunity. *See, e.g., Al-Jahmi* at ¶ 46, fn. 10, 15 (declining to address public duty immunity for the first time where the state defendant raised public duty immunity as an affirmative defense in an answer but did not argue it in the motion to the trial court, and the trial court did not address public duty immunity in its decision.). *See also Supportive Solutions, L.L.C. v. Electronic Classroom of Tomorrow*, 137 Ohio St.3d 23, 2013-Ohio-2410, ¶ 22 (declining to decide issues of immunity before the lower courts had the opportunity to address them in the first instance).

{¶ 30} Overall, we find the assigned error lacks merit as to its assertion of a jurisdictional bar, and additionally find it inappropriate to decide, in the first instance, whether OSU is entitled to the defense of discretionary immunity. *See Al-Jahmi* at ¶ 46. For these two reasons, OSU's assignment of error based on discretionary immunity and jurisdiction fails.

{¶ 31} According, we overrule assignment of error H.

**B. Merits of the Decision to Certify the Instant Class**

{¶ 32} OSU in its remaining seven assignments of error makes a broad challenge to the trial court's certification of the class in this case. For the following reasons, we find OSU has demonstrated the trial court abused its discretion in failing to conduct a rigorous analysis as required for class certification.

**1. Legal standard and analysis required to support class certification**

{¶ 33} Ohio courts find seven prerequisites for certification of a class action pursuant to Civ.R. 23: (1) an identifiable class must exist and the definition of the class must be unambiguous, (2) the named plaintiff representatives must be members of the class, (3) the class must be so numerous that joinder of all the members is impracticable ("numerosity"), (4) there must be questions of law or fact common to the class ("commonality"), (5) the claims or defenses of the representatives must be typical of the claims or defenses of the class ("typicality"), (6) the representative parties must fairly and adequately protect the interests of the class, and (7) one of the three requirements for certification set forth in Civ.R. 23(B) must be met. *Egbert* at ¶ 16, citing *Hamilton* at 70, 71 (1998), citing *Warner v. Waste Mgt.*, 36 Ohio St.3d 91, 96 (1988); Civ.R. 23.

{¶ 34} In this case, Smith moved for certification under Civ.R. 23(B)(3), which sets forth the "predominance" and "superiority" requirement. Specifically, Civ.R. 23(B)(3) states that "[a] class action may be maintained if * * *:

> (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:
>
> (a) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (b) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (d) the likely difficulties in managing a class action.

Civ.R. 23(B)(3).

{¶ 35} "[C]lass-action suits are the exception to the usual rule that litigation is conducted by and on behalf of only the individually named parties." *Felix v. Ganley Chevrolet, Inc.*, 145 Ohio St.3d 329, 2015-Ohio-3430, ¶ 25. "To fall within that exception, the party bringing the class action must affirmatively demonstrate compliance with the procedural rules governing class actions." *Id.* Specifically, "[t]he party seeking class action certification pursuant to Civ.R. 23 must prove, by a preponderance of the evidence, that the proposed class meets each of the requirements set forth in the rule." *See Egbert* at ¶ 17.

*See State ex rel. Doner v. Zody*, 130 Ohio St.3d 446, 2011-Ohio-6117, ¶ 54 ("A preponderance of the evidence is defined as that measure of proof that convinces the judge or jury that the existence of the fact sought to be proved is more likely than its nonexistence."). Correspondingly, "[t]he trial court must carefully apply the requirements of Civ.R. 23 and conduct a rigorous analysis into whether those requirements have been satisfied." *Egbert* at ¶ 15, citing *Hamilton* at 70, *Felix* at ¶ 26, and *Cullen v. State Farm Mut. Auto Ins. Co.*, 137 Ohio St.3d 373, 2013-Ohio-4733, at ¶ 17.

### 2. The trial court failed to conduct a rigorous analysis as to the common evidence of class-wide injury (Assignments of Error A and G)

{¶ 36} In OSU's first assignment of error, labeled "A," OSU contends the trial court abused its discretion in certifying the class despite failing to conduct the "rigorous analysis" required by Civ.R. 23 in determining whether Smith had satisfied the prerequisites for class certification. (Appellant's Brief at 1, 25.) In assignment of error G, OSU reiterates its position asserting the trial court failed to conduct the required rigorous analysis particularly with regard to Smith's proposed methodology to determine liability and damages.

{¶ 37} Smith counters that OSU waived this argument, and, regardless, OSU is incorrect that she failed to demonstrate classwide injury. Smith asserts, "[a]ll class members were injured because they all paid for something that they did not receive: in-person classes with access to the OSU campus. [Smith] is not required [to] provide more at the class certification stage." (Appellee's Brief at 38.) Smith argues that under *Felix* at ¶ 33, which relied on *Comcast Corp. v. Behrand*, 559 U.S. 27 (2013), and the "similar standard" stated in *Rikos v. Proctor & Gamble Co.*, 799 F.3d 497, 505 (6th Cir.2015), which was decided a week prior to *Felix*, "class certification requires a methodology for demonstrating classwide injury and damages, not an actual quantification." (Appellee's Brief at 39.)

{¶ 38} Following precedent of this court and the Supreme Court of Ohio concerning the level of analysis required at the class certification stage, we agree with OSU. In explaining a court's duty to conduct a rigorous analysis prior to certifying a class for litigation, the Supreme Court has emphasized that Civ.R. 23 is not "a mere pleading standard." *Felix* at ¶ 26, quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).

Contrary to Smith's suggestion, it is not sufficient for class certification purposes that the plaintiff's allegations merely raise " 'a colorable claim.' " *Madyda v. Ohio Dept. of Pub. Safety*, 10th Dist. No. 20AP-217, 2021-Ohio-956, ¶ 15, quoting *Cullen* at ¶ 34. Rather, the court must determine whether the party seeking class certification "affirmatively demonstrat[ed] compliance with the rules for certification and [is] prepared to prove 'that there are in fact sufficiently numerous parties, common questions of law and fact, etc.' " *Felix* at ¶ 26, quoting *Dukes* at 350.

{¶ 39} To this point, "a trial court's rigorous analysis of the evidence often requires looking into enmeshed legal and factual issues that are part of the merits of the plaintiff's underlying claims," but review of the merits may "only [be conducted] for the purpose of determining that the plaintiff has satisfied Civ.R. 23." *Felix* at ¶ 26, citing *Stammco, L.L.C. v. United Tel. Co. of Ohio*, 136 Ohio St.3d 231, 2013-Ohio-3019, ¶ 40. This "analysis requires the court to resolve factual disputes relative to each requirement and to find, based upon those determinations, other relevant facts, and the applicable legal standard, that the requirement is met." *Cullen* at ¶ 16.

{¶ 40} *Cullen* serves as an illustration of a rigorous analysis of the underlying merits of a plaintiff's claim, and review of the evidence presented, for purposes of determining whether class certification is appropriate. At the outset, the *Cullen* court emphasized that a court should not avoid evaluating evidence presented on contested issues of merit and reiterated that sufficient evidence must support the trial court's findings on class certification. Among other issues, the *Cullen* court examined the testimony and reports provided by the plaintiff's experts and found that, contrary to the plaintiff's argument, the experts fell short of establishing common proof of an element of the plaintiff's contract claim. In doing so, the court remarked on the questionable reliability of the scientific theory employed, the lack of sufficient evidentiary foundation for the experts' opinions, and the failure of the experts' opinions to resolve individual questions raised by the facts of the case that would overwhelm any classwide issue. Therefore, the *Cullen* court determined the trial court abused its discretion in granting class certification since a rigorous analysis of the evidence presented by the parties demonstrated that, under Civ.R. 23(B)(3), individual questions predominated over issues common to the class.

**{¶ 41}** This court had occasion to apply the *Cullen* and *Felix* standard recently in a similar case. In *Cross v. Univ. of Toledo*, 10th Dist. No. 21AP-279, 2022-Ohio-3825, we reversed the judgment of the trial court certifying a class of undergraduate students who paid tuition and fees at the University of Toledo during the spring 2020 pandemic. In doing so, while we were mindful of the high bar for reversal in an appeal of a class certification ruling, we nevertheless found the trial court's "perfunctory, conclusory" decision and "fail[ure] to grapple with the relevant law and the parties' arguments" to constitute an abuse of discretion considering the novel and complex issues of the case and, particularly, the plaintiff's theory of common injury as viewed under the Civ.R. 23(B)(3) predominance requirement. *Id.* at ¶ 39. Therefore, we found the trial court failed to conduct a rigorous analysis necessary for class certification and remanded the matter for further proceedings.

**{¶ 42}** Here, contrary to Smith's assertion of waiver, the parties hotly contested whether Smith provided sufficient proof of injury amenable to resolution on a classwide basis, and OSU contends the trial court's analysis on this issue lacked the necessary scrutiny of the arguments and evidence. " 'Perhaps the most basic requirement to bringing a lawsuit is that the plaintiff suffer some injury.' " *Felix* at ¶ 36, quoting Schwartz & Silverman, *Common Sense Construction of Consumer Protection Acts*, 54 U.Kan.L.Rev. 1, 50 (2005). "Although plaintiffs at the class-certification stage need not demonstrate through common evidence the precise amount of damages incurred by each class member, * * * they must adduce common evidence that shows all class members suffered *some* injury." *Felix* at ¶ 33. "If the class plaintiff fails to establish that all of the class members were damaged (notwithstanding questions regarding the individual damages calculations for each class members), there is no showing of predominance under Civ.R. 23(b)(3)." *Felix* at ¶ 35. *See also Cullen* at ¶ 15 (stating that, as a part of a proper rigorous analysis, the trial court must determine whether the party satisfied "*through evidentiary proof* at least one of the provisions of Rule 23(b) "). (Emphasis added.)

**{¶ 43}** The trial court in this case concluded that each student in the class had been injured by "losing the benefit for which they contracted: in-person classes and access to the campus," and this conclusion served as the basis for nearly every class certification requirement. (Trial Court Decision at 7 (identifiable class), 9 (class representative and membership, numerosity), 11 (commonality, typicality), 12-13 (fair and adequate

representation), and 15 (predominance, superiority).  The trial court treated the fact of closure of the campus and the cessation of in-person classes as dispositive to establishing an injury on behalf of Smith and the class.  The trial court explained, "[t]he determination of whether in-person classes ceased and whether the campus was closed is well suited for classwide determination." *Id.* at 15.  The trial court then repeatedly treated Smith experts' model as the means to, eventually, pin down the amount of damages owed to the class and did not consider OSU's challenge to it:  "the precise application of [Smith]'s [market value] model to the students' various circumstances, and the resultant amount of damages for each student, is not addressed at this time." *Id.* at 15.

{¶ 44} Several problems undermine this analysis.  First, instead of considering whether Smith presented sufficient evidence of the economic injury she claimed to have occurred, the trial court here assumed a "benefit" was lost based only on the fact OSU closed its campus and switched to remote classes and services in response to the pandemic.  In other words, the trial court either accepted Smith's allegations as true, as would occur under a pleading standard, or believed the asserted breach in this case—closure of campus and temporary termination of in-person classes and services—itself served as evidence of economic injury.  Either scenario constituted an abuse of discretion. *See Felix* at ¶ 26 (stating Civ.R. 23 is not "a mere pleading standard"); *Leiby v. Univ. of Akron*, 10th Dist. No. 05AP-1281, 2006-Ohio-2831, ¶ 24, citing *Metro. Life Ins. Co. v. Triskett Illinois, Inc.*, 97 Ohio App.3d 228, 235 (1st Dist.1994) (finding that, to recover on a breach-of-contract claim, the claimant must prove not only that the contract was breached, but that the claimant was injured due to the breach); *Alternatives Unlimited-Special, Inc. v. Ohio Dept. of Edn.*, 10th Dist. No. 12AP-647, 2013-Ohio-3890, ¶ 23 ("Generally, to recover for breach of contract, a plaintiff must prove the existence of economic damage as the result of the breach. * * * Recovery does not require proof of the amount of the economic damage."). *Claris, Ltd. v. Hotel Dev. Servs., LLC*, 10th Dist. No. 16AP-685, 2018-Ohio-2602, ¶ 28, quoting *Textron Fin. Corp. v. Nationwide Mut. Ins. Co.*, 115 Ohio App.3d 137, 144, (9th Dist.1996) ("[d]amages are not awarded for a mere breach of contract; the amount of damages awarded must correspond to injuries resulting from the breach").

{¶ 45} Second, the trial court did not review the evidence and arguments raised by OSU contesting proof of injury.  OSU argued that, having not conducted any portion of the

market survey or analysis, Gaskin admitted he could not opine to a reasonable degree of scientific certainty that OSU students were injured in this case.[3]  Moreover, according to Gaskin's report and testimony, the methodology presented to potentially answer the question of whether the class suffered any common injury due to the campus closure and switch to remote classes excludes any survey questions or consideration of market preferences during an emergency such as the pandemic that forced the closure here.  OSU submitted an expert report that made this point, as well as evidence that students paid the same for in-person and online learning and that the in-person teaching modality carried the possibility of substantial remote instruction even in a normal semester.

{¶ 46}  The trial court, in assuming an injury from the fact of closure and termination of in-person classes, did not assess these complicated and difficult considerations, particularly as they relate to whether Smith presented *any* common evidence—or even a method to possibly determine—that class members suffered an economic injury considering the effect of the pandemic.[4]  As demonstrated by statements during the oral hearing, the trial court did not believe that issues of merit should be considered at the class certification stage and sought to expedite defining a class in order to examine those merits issues at the next stage of litigation.  Thus, having accepted the closure of campus and temporary termination of in-person classes and services as an injury per se, and having failed to consider how the pandemic affects class certification in this case at all, the trial court did not undertake a rigorous analysis with respect to the number and nature of individualized inquires that might be necessary to establish liability with respect to both tuition and fees.

{¶ 47}  Finally, the trial court folded Smith's unjust enrichment claim and arguments as to certain fees into the same generalized injury analysis without providing any individualized consideration of those issues.  *See, e.g., Cross* at ¶ 36 (finding the trial court failed to conduct a rigorous analysis as to certain fees where the trial court acknowledged

---

[3] In other words, without an expert opinion as to this issue, the plaintiff's case here is arguably weaker than that presented in *Cullen*, which included experts' opinions as common proof of a breach of contract claim under the predominance requirement, but, according to the Supreme Court, those opinions lacked a sufficient evidentiary foundation.

[4] We note that even Smith agrees speculation is insufficient to "tip the scales in a class certification ruling." (Reply to Memo. in Opp. at 3, citing *Bridging Communities Inc. v. Top. Fin. Inc.*, 843 F.3d 1119, 1125 (6th Cir.2016).)

the parties' competing factual positions on the fees but "went no further in addressing how issues of commonality or predominance applied to [them]").

**{¶ 48}** Considering all the above, we find the trial court's conclusion that OSU's (alleged) breach of implied contract to hold in-person classes on an open campus constituted—in and of itself—proof of a common injury suffered by the class was an error of law, and the trial court's failure to rigorously analyze the requirements for class certification due to this error constitutes an abuse of discretion. Therefore, we conclude OSU's assignments of error challenging the trial court's rigorous analysis, labeled A and G, have merit. We further find that, because the error permeated the trial court's reasoning throughout its decision, our decision in this regard renders the remaining assignments of error, labeled B, C, D, E, and F, moot at this juncture. App.R. 12(A)(c).

**{¶ 49}** Accordingly, assignments of error A and G are sustained.

## V. CONCLUSION

**{¶ 50}** Having overruled assignment of error H, sustained assignments of error A and G, and determined assignments of error B, C, D, E, and F to be moot, we reverse the judgment of the Court of Claims of Ohio. The cause is remanded for further proceedings consistent with this decision.

*Judgment reversed and cause remanded.*

BEATTY BLUNT and McGRATH, JJ., concur.

————————————